Jorge Cabecera Rodriguez (“Rodriguez”) pleaded guilty to illegal reentry after deportation in violation of 8 U.S.C. § 1326 and was sentenced to twenty-three months of imprisonment. Rodriguez now challenges his sentence, arguing that it was error for the district court to apply a sixteen-level “crime of violence” enhancement based on a prior Texas conviction for sexual assault of a child. We AFFIRM Rodriguez’s sentence, and in so doing, we adopt a plain-meaning approach to the “crime of violence” enhancements of “sexual abuse of a minor” and “statutory rape” under U.S. Sentencing Guidelines Manual § 2L1.2(b)(l)(A)(ii) [hereinafter “U.S.S.G.”]. Under this approach, we hold that for the purposes of the crime-of-violence enhancement under § 2L1.2(b)(l)(A)(ii), the meaning of “minor” in “sexual abuse of a minor” is a person under the age of majority — which we conclude to be eighteen. We also hold that the age of consent for the purposes of “statutory rape” is the age of consent as defined by statute in the jurisdiction where the prior conviction was obtained. More specifically, under this plain-meaning approach, we proceed with the following four steps: First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law. Third, if the offense category is a non-common-law offense category, then we derive its “generic, contemporary meaning” from its common usage as stated in legal and other well-accepted dictionaries. Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category. This plain-meaning approach is faithful to the Supreme Court’s decision in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), but does not impose a cumbersome methodological requirement on lower courts to conduct a nationwide survey and look to the majority of state codes — as well as the Model Penal Code, federal law, and criminal law treatises — when deriving the meaning of an undefined offense category enumerated in a federal sentencing enhancement.
I. Procedural Background
Rodriguez was charged with illegal reentry after deportation following conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2), and pleaded guilty without the benefit of a plea agreement. After the district court accepted Rodriguez’s plea, it ordered the preparation of a Presentence Investigation Report (“PSR”). The probation officer determined that Rodriguez had a base offense level of eight. The probation officer recommended that Rodriguez’s base offense level be increased by a sixteen-level “crime of violence” enhancement pursuant to U.S.S.G. § 2L1.2(b)(l)(A)(ii) because Rodriguez had been deported following a 2003 conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2). From this adjusted offense level of twenty-four, Rodriguez received a three-level reduction pursuant to U.S.S.G. § 3E1.1 for his prompt acceptance of responsibility. Accordingly, Rodriguez had a total offense *545 level of twenty-one. Rodriguez received four criminal history points from his two prior adult criminal convictions,[1] which resulted in a criminal history category of III. Rodriguez was subject to an imprisonment range of forty-six to fifty-seven months under the Guidelines based on his offense level of twenty-one and criminal history category of III.
Before the sentencing hearing, Rodriguez filed a written objection to the probation officer’s recommendation of the sixteen-level enhancement pursuant to § 2L1.2(b)(l)(A)(ii). Rodriguez argued, as he does before this court, that his conviction under Texas Penal Code § 22.011(a)(2) is not a “crime of violence” under § 2L1.2(b)(l)(A)(ii) because that statute criminalizes conduct that falls outside of the “generic, contemporary meaning” of “statutory rape” and “sexual abuse of a minor.” Specifically, he argued that the generic definitions of both offense categories require that the victim be under sixteen years of age and that the defendant be at least four years older than the victim. Rodriguez contended that because § 22.011(a)(2) applies to victims under seventeen years of age and requires only a three-year age differential, the statute is broader than these generic definitions. He also maintained that the victim was sixteen years old at the time of the offense, and that he was nineteen years old at the time.[2] Rodriguez explained that without these enhancements, he would have a total offense level of ten[3] and, therefore, the Guidelines range would be ten to sixteen months. He also argued that a downward departure from the Guidelines was appropriate because of his cultural assimilation and the fact that his criminal history overstated the seriousness of his prior convictions.
At the sentencing hearing, the district court first discussed Rodriguez’s objection to the sixteen-level “crime of violence” enhancement. Specifically, the district court asked Rodriguez’s counsel whether any precedent supported Rodriguez’s position that his 2003 conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2) was not a “crime of violence.” Rodriguez’s counsel expressly acknowledged that under our precedent, the district court lacked the ability to conclude *546 that Rodriguez’s conviction was not a “crime of violence.” In response, the district court noted that although such a concession might tie its hands with respect to Guidelines application, it retained the discretion to consider a departure from the Guidelines or a variance under 18 U.S.C. § 3553(a).
Following this statement, the discussion at the sentencing hearing turned to consideration of the district court’s discretion to grant a variance from the Guidelines. Initially, the district court asked the government about its position on the appropriateness of a variance under § 3553(a). The government agreed that a variance was appropriate on the facts of this case and recommended a three-level variance — lowering the offense level from twenty-one to eighteen, resulting in a Guidelines range of thirty-three to forty-one months.
The district court then asked Rodriguez whether he agreed with the government’s suggested three-level variance. Rodriguez’s counsel expressed appreciation for the government’s willingness to acknowledge that a Guidelines sentence would be inappropriate, but argued that the appropriate variance would be to treat Rodriguez’s conviction as a felony rather than as a “crime of violence.” Rodriguez’s counsel explained that with this suggested variance, the adjusted offense level would be ten, resulting in a Guidelines range of ten to sixteen months. Under this range, Rodriguez’s counsel recommended a sentence of one year and a day. The government responded to this recommendation by reiterating its position that a sentence between thirty-three and forty-one months would be appropriate, contending that a lower sentence would not adequately address Rodriguez’s conviction for sexual assault of a child. Following this response by the government, the district court acknowledged that it was bound by precedent, as Rodriguez’s counsel conceded, to overrule Rodriguez’s objection that his offense did not constitute “statutory rape” or “sexual abuse of a minor” under § 2L1.2.[4] After overruling his objections, the district court calculated his Guidelines range of forty-six to fifty-seven months.
The district court, however, explicitly noted that despite its conclusion that the Guidelines range was forty-six to fifty-seven months, a variance was appropriate and requested further argument on the appropriate sentence to impose. Rodriguez’s counsel continued by arguing that one year and a day was the appropriate sentence considering his significant cultural assimilation. Rodriguez also made a statement on his own behalf, which acknowledged that he knew it was a crime to return to the United States but explained that he returned “with the best intentions with being with my family and helping them out.” The government declined the opportunity to provide further argument.
After hearing all arguments by Rodriguez and the government, the district court explained: *547 dant has returned after being deported, which cuts in the other direction, and that he has a conviction and these circumstances giving rise to it, appears the appropriate 3553(a) sentence would be 24 months, with another month off of that to reflect the ICE custody for which he would otherwise not receive credit, which is a total sentence of 23 months. That is less than the government asked for. It’s somewhat more than the defendant asked for. But the Court believes that it does address all of the 3553(a) factors in the appropriate way.
*546 All right. Unfortunately, you’re both right. He was convicted. It’s an unusual set of circumstances that appear to have given rise to that conviction, and I credit the government for recognizing that this should not be treated in a literal or sort of hand-fisted way as a crime of violence under 3553(a). I agree that under 3553(a) there does need to be a lower sentence than the guidelines would otherwise call for. The extent of the variance is the issue of course. Putting all of the factors together, including culture assimilation and the fact that this is, I guess, the third time the defen-
*547 The Statement of Reasons (“SOR”), which the district court filed a few days after the sentencing hearing, reflected the district court’s explanation at the sentencing hearing that it was adopting the PSR without change, but imposing a sentence outside the advisory Guidelines system. Specifically, the district court checked the box indicating that “the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)” justified the selection of a sentence outside the advisory Guidelines system.
On appeal, Rodriguez argues that Texas Penal Code § 22.011(a)(2) was overbroad because it set the age of consent too high and required an age differential that was too low. A panel of this court rejected Rodriguez’s arguments with respect to the age of consent as foreclosed by circuit precedent, noting that this court had previously held that the offense under § 22.011(a)(2) constitutes both “statutory rape” and “sexual abuse of a minor” — both of which are enumerated as “crimes of violence” for purposes of § 2L1.2(b)(l)(A)(ii). United States v. Rodriguez, 698 F.3d 220 (5th Cir.), vacated and reh’g en banc granted by 701 F.3d 1080 (5th Cir.2012) (per curiam). The panel rejected his argument with respect to the age-differential issue on the ground that there is substantial disagreement across the states about the age difference required between the victim and the defendant. Id. The panel concurrence called attention to “confusion in our case law” over our inconsistent determinations of the “generic, contemporary meaning” of “minor” in the context of the “sexual abuse of a minor” and “statutory rape” offense categories in the § 2L1.2 enhancement. Id. at 227. Rodriguez subsequently sought and obtained en banc review.
II. Discussion
Under Gall v. United States, we review a sentencing decision for reasonableness regardless of whether the sentence imposed is inside or outside the Guidelines range. 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). In conducting this review, we “must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.... ” Id. If the district court’s sentencing decision is proeedurally sound, we “then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.” Id. In this case, Rodriguez contends only that the district court committed procedural error by improperly calculating the Guidelines range. He does not argue that the twenty-three-month sentence was substantively unreasonable.[5]
*548 Rodriguez claims that it was error for the district court to impose a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(l)(A)(ii) for a crime of violence based on his prior conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2). The Texas statute defines “child” as a person under the age of seventeen. Tex. PeNal Code § 22.011(c)(1). In Rodriguez’s view, the offense categories of “sexual abuse of a minor” and “statutory-rape” enumerated in the § 2L1.2(b)(l)(A)(ii) enhancement require a victim under the age of sixteen. We disagree, and hold that for the purposes of “sexual abuse of a minor” in the § 2L1.2 enhancement, the “generic contemporary meaning” of “minor” is a person under the age of majority — which we conclude to be eighteen. Moreover, the age of consent for the purposes of “statutory rape” in § 2L1.2 is the age of consent as defined by statute in the jurisdiction where the prior conviction was obtained.[6]
A defendant convicted of illegal reentry is subject to a Guidelines enhancement if he was convicted of a “crime of violence” prior to his removal or deportation. U.S.S.G. § 2L1.2(b)(l)(A)(ii). The application notes to § 2L1.2 define “crime of violence” as one of several enumerated offense categories, including “sexual abuse of a minor” and “statutory rape.”[7] Id. § 2L1.2 cmt. n. l(B)(iii). We review de novo whether a prior conviction qualifies as a crime of violence within the meaning of the Guidelines. United States v. Hernandez-Galvan, 632 F.3d 192, 196 (5th Cir.2011) (citation omitted).
*549 When determining whether a prior conviction qualifies as a crime of violence under the Guidelines, we have been using the categorical approach that the Supreme Court first outlined in Taylor v. United, States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Under the categorical approach, the analysis is grounded in the elements of the statute of conviction rather than a defendant’s specific conduct.[8] See United States v. Calderon-Pena, 383 F.3d 254, 257 (5th Cir.2004) (en banc) (citations omitted). To the extent that Taylor continues to be instructive beyond its specific statutory context, we then will interpret the meaning of an undefined offense category in the Guidelines “according [to] its ‘generic, contemporary meaning,’ and rely on a uniform definition regardless of the ‘labels employed by the various States’ criminal codes.’ ” United States v. Dominguez-Ochoa, 386 F.3d 639, 642-43 (5th Cir.2004) (quoting Taylor, 495 U.S. at 592, 598, 110 S.Ct. 2143). The Guidelines do not define “sexual abuse of a minor” or “statutory rape” under § 2L1.2, so the crux of this case is the “generic, contemporary meaning” of: (1) the term “minor” in “sexual abuse of a minor,”[9] and (2) the age of consent required for “statutory rape.” [10]
Deriving the “generic, contemporary meaning” of an offense category enumerated in the Guidelines is challenging because *550 Taylor and its progeny do not specify whether we must use a particular method when engaging in a Taylor analysis. For these reasons, we have found it difficult to apply Taylor's categorical approach.
The parties’ arguments illustrate our methodological inconsistencies when applying Taylor. In some cases, we have taken a plain-language approach and relied primarily on dictionary definitions to derive the “generic, contemporary meaning” of offense categories enumerated in the Guidelines. See, e.g., United States v. Izaguirre-Flores, 405 F.3d 270, 275-76 (5th Cir.2005) (using definitions of “sexual abuse” in . Black’s Law Dictionary and Webster’s Third New International Dictionary to define the “generic, contemporary meaning” of “sexual abuse of a minor” for the purposes of the crime-of-violence enhancement in § 2L1.2); United States v. Zavala-Sustaita, 214 F.3d 601, 604 (5th Cir.2000) (relying on definitions of “sexual” and “abuse” in The American Heritage Dictionary to determine the generic meaning of “sexual abuse of a minor” for the purposes of the aggravating felony sentencing enhancement in § 2L1.2). In other cases, we have looked to definitions in various state codes, federal law, the Model Penal Code, and criminal law treatises. See, e.g., Munoz-Ortenza, 563 F.3d at 114-16 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the “generic, contemporary meaning” of “minor” was sixteen for the purposes of applying the “sexual abuse of a minor” category in § 2L1.2 to prior convictions involving oral copulation); Lopez-DeLeon, 513 F.3d at 474-75 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the “generic, contemporary meaning” of the age of consent was sixteen for the purposes of the “statutory rape” category in § 2L1.2). The use of these different approaches has created challenges for the bench and the bar. Further, our efforts have yielded results at odds with our sister circuits’ conclusions. See, e.g., United States v. Montenegro-Recinos, 424 F.3d 715, 717-18 (8th Cir.2005).[11] Therefore, we take this opportunity to clarify the method by which we determine the “generic, contemporary meaning” of an enumerated offense category when engaging in a Taylor analysis.[12]
Three different methods of determining the “generic, contemporary meaning” of offense categories enumerated in federal sentencing enhancements have emerged among the circuits. First, the majority of circuits have taken a plain-language approach, relying on the common meaning of terms as stated in legal and other well-accepted dictionaries.[13] Second, some cir *551 cuits have taken a multi-source approach, deriving the generic meaning of an offense category from the various state codes, the Model Penal Code, federal law, and criminal law treatises.[14] Finally, the Ninth and Eleventh Circuits have adopted a mixed-method approach, distinguishing between: (1) traditional offense categories that are defined at common law and (2) non-traditional offense categories that are not defined at common law.[15] To determine the generic meaning of traditional offense cat *552 egories, they look to the various codes, the Model Penal Code, federal law, and criminal law treatises. For non-traditional offense categories, they rely on the common meaning of terms as stated in legal and other well-accepted dictionaries.
Today, we join the First, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits and adopt a plain-meaning approach when determining the “generic, contemporary meaning” of non-common-law offense categories enumerated in federal sentencing enhancements. Under this approach, our application of Taylor"s categorical approach to a prior state conviction proceeds in the following four steps: First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law.[16] Third, if the offense category is a non-common-law offense category, then we derive its “generic, contemporary meaning” from its common usage as stated in legal and other well-accepted dictionaries.[17] Fourth, we look to *553 the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category.
We adopt this approach based on our close review of Taylor. In Taylor, the Supreme Court considered whether the defendant’s prior second-degree burglary conviction in Missouri was a “violent felony” under a sentence-enhancement provision of the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e).[18] When Congress first passed the ACCA in 1984, the statute defined “burglary” as “any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense.” Taylor, 495 U.S. at 581, 110 S.Ct. 2143 (quoting 18 U.S.C. § 1202(c)(9) (repealed 1986)). Congress deleted this definition from the ACCA when it amended the statute, but retained burglary as a predicate offense. Because of this deletion, the Supreme Court was faced with the question of how to define the meaning of “burglary” in the ACCA. Id. at 580, 110 S.Ct. 2143.
The Supreme Court first rejected the argument that “Congress intended the meaning of ‘burglary’ for purposes of [the ACCA] to depend on the definition adopted by the State of conviction.” Id. at 590, 110 S.Ct. 2143. The Supreme Court reasoned that such an approach would result in a person convicted of “burglary” in one state qualifying for the ACCA enhancement, but not a person who committed the same law-breaking acts in a different state that did not label those acts as “burglary.” Id. Viewing this as an “implausible” interpretation of Congress’s intent, id., the Supreme Court concluded that “burglary” in the ACCA “must have some uniform definition independent of the *554 labels employed by the various States’ criminal codes.” Id. at 592,110 S.Ct. 2143.
In its search for uniformity, the Supreme Court then addressed the approach taken by some courts of appeals that defined “burglary” in the ACCA to mean the common-law definition of burglary. Id. In rejecting that position,'the Supreme Court stressed that “the contemporary understanding of ‘burglary’ has diverged a long way from its common-law roots.” Id. at 593, 110 S.Ct. 2143. The Supreme Court reasoned that although “[bjurglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony,” id. at 580 n. 3, 110 S.Ct. 2143 (citation omitted), most states had “expanded this definition to include entry without a ‘breaking,’ structures other than dwellings, offenses committed in the daytime, entry with intent to commit a crime other than a felony, etc.,” id. at 593, 110 S.Ct. 2143 (citation omitted).
Next, the Supreme Court evaluated whether the meaning of “burglary” in the ACCA applied to only a special subclass of burglaries with elements that included “conduct that presents a serious risk of physical injury to another.” Id. at 597, 110 S.Ct. 2143. The Supreme Court concluded that this argument was inconsistent with the plain language of the ACCA. It reasoned that “if this were Congress’ intent, there would have been no reason to add the word ‘burglary’ to [the ACCA], since that provision already includes any crime that ‘involves conduct that presents a serious potential risk of physical injury to another.’ ” Id.
After ruling that the meaning of “burglary” was not limited to its common-law definition or to a subclass of burglaries, the Supreme Court stated that “Congress meant by ‘burglary’ the generic sense in which the term is now used in the criminal codes of most States.” Id. at 598, 110 S.Ct. 2143 (citing Perrin v. United States, 444 U.S. 37, 45, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); United States v. Nardello, 393 U.S. 286, 289, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969)). The Supreme Court further stated that “[although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.” Id. (citing W. LaFave & A. Scott, Substantive Criminal Law § 8.13(a), p. 466 (1986)). Based on these principles, the Supreme Court held that “an offense constitutes ‘burglary’ for purposes of [the ACCA] if either its statutory definition substantially corresponds to ‘generic’ burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.” Id. at 602, 110 S.Ct. 2143.
We have several times interpreted Taylor as requiring that lower courts always look to the majority of state codes — as well as to other sources, including the Model Penal Code, federal law, and criminal law treatises — when determining the “generic, contemporary meaning” of an undefined offense category in the Guidelines. See, e.g., United States v. Santiesteban-Hernandez, 469 F.3d 376, 379 (5th Cir.2006) (“The generic, contemporary meaning of a predicate offense ‘roughly correspond^] to the definitions of [the crime] in a majority of the States criminal codes.’ ” (alteration in original) (quoting Taylor, 495 U.S. at 589, 110 S.Ct. 2143)); Munoz-Ortenza, 563 F.3d at 114-16 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the “generic, contemporary meaning” of “minor” was sixteen for the purposes of applying “sexual abuse of a minor” in § 2L1.2 to prior convictions involving oral copulation); Lopez-DeLeon, 513 F.3d at 474-75 (relying on definitions in the major *555 ity of state codes, the Model Penal Code, and federal law to conclude that the “generic, contemporary meaning” of the age of consent was sixteen for the purposes of “statutory rape” in § 2L1.2); United States v. Mendez-Casarez, 624 F.3d 233, 239 (5th Cir.2010) (“The generic, contemporary meanings of offenses can be found as they are defined ‘in the criminal codes of most States,’ the Model Penal Code, and treatises such as Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law (1986).” (footnote omitted) (quoting Taylor, 495 U.S. at 598, 110 S.Ct. 2143)). We conclude that this interpretation reads Taylor too strictly and overlooks that the Taylor Court referenced statutory definitions for the narrow purpose of distinguishing the contemporary sweep of “burglary” from its antiquated common-law past. Contrary to our prior interpretation, Taylor did not impose a methodological requirement on lower courts to look always to the majority of state codes — as well as the Model Penal Code, federal law, and criminal law treatises — when deriving the “generic, contemporary meaning” of an undefined offense category in a federal sentencing enhancement. See Ramirez-Garcia, 646 F.3d at 782-83 (rejecting that Taylor requires lower courts to look to definitions in the various state codes, criminal law treatises, and the Model Penal Code to formulate the “generic, contemporary meaning” of “sexual abuse of a minor” in § 2L1.2).[19]
Our construction of Taylor is supported by the reasoning in the two cases that the Taylor Court cited as authority to support its reliance on the broadened definitions of “burglary” in the majority of state codes— Perrin v. United States and United States v. Nardello. Both cases involved common-law offense categories that the Court defined using their “contemporary, generic meaning,” not their antiquated meaning at common law. In Perrin, the petitioner *556 argued that Congress intended to confine the meaning of “bribery” in 18 U.S.C. § 1952 (“the Travel Act”) to its common-law definition, which limited the commission of the offense to public officials. 444 U.S. at 41, 100 S.Ct. 311. In rejecting this narrow definition, the Supreme Court reasoned:
In sum, by 1961 the common understanding and meaning of “bribery” had extended beyond its early common-law definitions. In 42 States and in federal legislation, “bribery” included the bribery of individuals acting in a private capacity. It was against this background that the Travel Act was passed.
Id. at 45, 100 S.Ct. 311 (footnote omitted). In Nardello, the Supreme Court addressed the meaning of “extortion” in the Travel Act. 393 U.S. at 287, 89 S.Ct. 534. The common-law definition of that offense also was limited to public officials. Id. at 289, 89 S.Ct. 534. The Supreme Court recognized that “[i]n many States ... the crime of extortion ha[d] been statutorily expanded to include acts by private individuals under which property is obtained by means of force, fear or threats.” Id. at 290, 89 S.Ct. 534 (citation omitted). In concluding that “extortion” in the Travel Act was not limited to its common-law definition, the Supreme Court reasoned that “in many States ... the crime of extortion has been statutorily expanded to include acts by private individuals.” Id.
We recognize that the Taylor Court rejected the view that Congress intended for undefined offense categories in federal sentencing enhancements to correspond to what states happen to call their crimes. 495 U.S. at 591, 110 S.Ct. 2143. At the same time, our federalist system vests states with the power to define and to enforce their own criminal laws, a principle validated by Taylor, Perrin, and Nardello, which discerned congressional intent that contemporary state statutes, not their common-law antecedents, should be supported as the guiding focus in defining common law, enumerated offenses. See id. at 593-94, 110 S.Ct. 2143; Perrin, 444 U.S. at 43-45, 100 S.Ct. 311; Nardello, 393 U.S. at 296, 89 S.Ct. 534; see generally Engle v. Isaac, 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (affirming that “[t]he States possess primary authority for defining and enforcing the criminal law”). In joining the First, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, we facilitate uniformity across the circuits by adopting a single, workable method to derive the “generic, contemporary meaning” of non-common-law offense categories enumerated in federal sentencing enhancements.
Taking a plain-language approach when determining the “generic, contemporary meaning” of non-common-law offense categories furthers this cooperative federalism approach. As a conceptual matter, it is difficult, if not impossible, to identify an accurate set of discrete elements that define offense categories that do not have a generic structure that is rooted in common law. See, e.g., See United States v. Corona-Sanchez, 234 F.3d 449, 453 (9th Cir.2000) (reasoning that “[bjecause burglary is a discrete offense [at common law], it lends itself to a narrow definition that may be applied uniformly ... without regard to nuances of state law” (internal quotation marks and citations omitted)). Moreover, wide variations in prohibited conduct under state codes make it difficult, if not impossible, to determine whether a majority consensus exists with respect to the element components of an offense category or the meaning of those elements.
The wide variation of prohibited conduct in the various state codes involving sexual abuse of minors lends support to these arguments. As the Eleventh Circuit has observed, “[w]hile some states choose to punish only physical contact with minors, others punish a substantial range of non *557 physical acts towards minors, and while some require a perpetrator’s physical presence in front of a minor, others punish remote acts and communications.” Ramirez-Garcia, 646 F.3d at 783 n. 8. Given this wide variation, it is doubtful that we can identify a majority consensus, or even single out a discrete set of common elements that define “sexual abuse of a minor” in § 2L1.2. See id. (stressing that “formulating a generic definition of ‘sexual abuse of a minor’ from states’ statutes and other sources would prove overwhelming, if not an impossibly inaccurate process”). The same problem arises in the context of “statutory rape” under § 2L1.2. Many jurisdictions do not use the specific label “statutory rape” in their codes, and address the legality of many different types of sexual activities involving minors (e.g., sexual contact, penetration, etc.) under a single statute.[20] Further, twenty-three jurisdictions characterize “statutory rape” (or its equivalent) as a strict-liability offense, whereas eighteen jurisdictions allow for a mens rea defense and limit strict liability to situations in which there is a specific age differential between the victim and the defendant. See Catherine L. Carpenter, On Statutory Rape, Strict Liability, and the Public Welfare Offense Model, 53 Am. U.L.Rev. 313, 385-91 (2003) (providing a jurisdictional analysis of statutory rape laws). This variation makes it difficult to derive a uniform “generic, contemporary meaning” of “statutory rape” that is accurate by looking to the various state codes — and other sources, including the Model Penal Code, federal law, and criminal law treatises. See id. at 317 (“Unlike many crimes whose common law blueprint is copied throughout the country with uniformity, statutory rape laws vary greatly among the states”). It also complicates how we should calculate the number of jurisdictions that would comprise a “majority” for the purposes of “statutory rape” under § 2L1.2. Indeed, that endeavor becomes even more illusory if it is done by disaggregating closely-related elements, like age of consent and age differential, see also 18 U.S.C. § 2243(a) (defining the federal offense as applying only when the victim is over the age of twelve but under the age of sixteen and at least four years younger than the defendant), in order to then reassemble these elements into perceived state-groupings we say add up to some sufficient majority to qualify as “generic.”
For these reasons, we conclude that taking a plain-meaning approach to derive the “generic, contemporary meaning” of non-common-law offense categories is grounded in the most reasoned interpretation of Taylor, and avoids some of the gymnastics that our prior application of Taylor[1] s categorical approach required.
We now apply our approach to Rodriguez’s case. As explained above, we begin our inquiry by identifying the enumerated offense category that triggers the federal sentencing enhancement. We then evalu *558 ate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. Rodriguez’s case involves “sexual abuse of a minor” and “statutory rape” in the § 2L1.2 erime-of-violence enhancement. We described above that the meaning of these offense categories is unclear from the plain terms of § 2L1.2 and its applicable commentary.
Next, we determine whether “sexual abuse of a minor” and “statutory rape” are offense categories defined at common law, or offense categories not defined at common law. We conclude that both are non-common-law offense categories. This conclusion is consistent with that of other circuits that have considered the issue. See Ramirez-Garcia, 646 F.3d at 783 (concluding that “sexual abuse of a minor” in the § 2L1.2 enhancement is a non-traditional offense category that is not defined at common law); Lopez-Solis, 447 F.3d at 1206-07 (characterizing “sexual abuse of a minor” in the § 2L1.2 enhancement as non-traditional offense); United States v. Gomez-Mendez, 486 F.3d 599, 602 n. 4 (9th Cir.2007) (concluding that “statutory rape is distinct from the common law offense”). It is also consistent with leading criminal law treatises to consider the issue. In listing the offenses at common law, Professor LaFave’s treatise notes:
Although there were some early criminal statutes, in the main the criminal law was originally common law. Thus by the 1600’s the judges, not the legislature, had created and defined the felonies of murder, suicide, manslaughter, burglary, arson, robbery, larceny, rape, sodomy and mayhem; and such misdemeanors as assault, battery, false imprisonment, libel, perjury and intimidation of jurors. During the period from 1660 (the Restoration of the monarchy of Charles II after Cromwell) to 1860 the process continued, with the judges creating new crimes when the need arose and punishing those who committed them: blasphemy (1676), conspiracy (1664), sedition (18th century), forgery (1727), attempt (1784), solicitation (1801).
Wayne R. LaFave, Criminal Law, § 2.1(b) (5th ed. 2010). Neither “sexual abuse of a minor” nor “statutory rape” appears in this list. LaFave discusses all sexual crimes involving minors in a subsection of the treatise dedicated to statutory rape, which lends further support to the conclusion that it is difficult to cleanly identify uniform sets of elements that define “sexual abuse of a minor” and “statutory rape.” In that subsection, he explains that criminal prohibitions against sexual relations with a child did not exist at early common law — rather, those offenses were statutory creations:
Under early English common law, sexual relations with a child, no matter how young, was not regarded as rape if the child consented. However, an Early English statute made it a felony to have carnal knowledge with a child under the age of ten, with or without the child’s consent.
§ 17.4(c) (citations omitted). In this passage, LaFave also cites to two early English cases — Reg. v. Read, 1 Den. C.C. 377; Reg. v. Webb, 2 C & K 937 — as authority that sexual relations with a child were not regarded as rape if the child consented under early English common law.[21] Blackstone’s Commentaries also lend support to *559 our conclusion that “sexual abuse of a minor” and “statutory rape” are non-common-law offense categories. See W. Blackstone, IV Commentaries on the Laws of England 212 (1st American ed. 1772) (reprint 1992) (“And by statute 18 Eliz. c. 7. it is made felony ... the abominable wickedness of carnally knowing or abusing any woman child under the age of ten years; in which case the consent or non-consent is immaterial.”).
Having concluded that “sexual abuse of a minor” and “statutory rape” under § 2L1.2. are non-common-law offense categories, we derive their “generic, contemporary meaning” from the common usage of their terms as stated in legal and other well-accepted dictionaries. We first determine the generic meaning of “minor” in “sexual abuse of a minor.”[22] Oxford English Dictionary defines “minor” as “[ujnder age; below the age of majority.” 9 Oxford English Dictionary 824 (2d ed. 1989); accord, Merriam-Webster’s Collegiate Dictionary 1220 (11th ed. 2003) (defining “minor” as “a person who has not attained the age of majority”); Webster’s *560 Third New International Dictionary (3d ed. 2002) (defining “minor” as “a person of either sex under full age of majority: one who has not attained the age at which full civil rights are accorded ...: one who in England and generally in the U.S. is under 21 years of age”). Moreover, Black’s Law Dictionary (9th ed. 2009) defines “minor” as “[a] person who has not reached full legal age; a child or juvenile.” Contrary to Rodriguez’s position, neither source defines “minor” as below the age of sixteen. Rather, using these definitions, a statute that prohibits acts of sexual abuse against minors will comport with the generic meaning of “minor” as long as the statute sets the age of consent below the age of majority — which we conclude to be the age of eighteen under our method.[23] As noted above, Black’s Law Dictionary defines “minor” in terms of a “person who has not reached full legal age.” Black’s Law Dictionary (9th ed. 2009) defines “legal age” as either “age of capacity” or “age of majority,” and provides that both phrases are usually defined by statute at eighteen years old. It defines “age of capacity” as “[t]he age, usu. defined by statute as 18 years, at which a person is legally capable of agreeing to a contract, maintaining a lawsuit, or the like.” Moreover, it defines “age of majority” as “[t]he age, usu. defined by statute as 18 years, at which a person attains full legal rights, esp. civil and political rights such as the right to vote.... In almost all states today, the age of majority is 18, but the age at which a person may legally purchase and consume alcohol is 21.”[24]
*561 We next determine the generic meaning of “statutory rape.”[25] Merriam-Webster’s Collegiate Dictionary defines “statutory rape” as “sexual intercourse with a person who is below the statutory age of consent.” Merriam-Webster’s Collegiate Dictionary 1220 (11th ed. 2003); accord Webster’s Third New International Dictionary (defining “statutory rape” as “sexual intercourse with a female whether willing or unwilling who is below the age fixed by the applicable statute as the age of consent.”). Black’s Law Dictionary (9th ed. 2009) defines “statutory rape” as “[u]n-lawful sexual intercourse with a person under the age of consent (as defined by statute), regardless of whether it is against that person’s will.” (Emphasis added). These definitions do not set a uniform definition of the age of consent at sixteen. Moreover, the Black’s Law Dictionary definition states explicitly that the age of consent for the purposes of statutory rape is to be defined by statute.[26] For these reasons, we conclude that the “generic, contemporary meaning” of “statutory rape” sets the age of consent as a person under the age of majority as defined by statute.[27]
*562 Finally, we determine whether the elements of Rodriguez’s statute of conviction comport with the generic meaning of “sexual abuse of a minor” and “statutory rape.” Rodriguez was convicted of sexual assault of a child under Texas Penal Code § 22.011(a)(2) after engaging in sexual conduct with a sixteen-year-old victim when he was nineteen years of age. Section 22.011(a)(2) punishes any defendant who:
(2) intentionally or knowingly:
(A) causes the penetration of the anus or sexual organ of a child by any means;
(B) causes the penetration of the mouth of a. child by the sexual organ of the actor;
(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
(E)causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.
Tex. PeNAL Code § 22.011(a)(2). The Texas statute defines “child” as “a person younger than 17 years of age.” Id. at § 22.011(c)(1).
Rodriguez does not challenge that these elements comport with the “generic, contemporary meaning” of “sexual” or “abuse.” Rather, he argues that the Texas statute is broader than the generic meaning of “sexual abuse of a minor” and “statutory rape” because it defines “child” at the age of seventeen, not sixteen. We disagree. For the reasons explained above, the “generic, contemporary meaning” of “minor” in the “sexual abuse of a minor” category under § 2L1.2 is a person under the age of majority.[28] Moreover, the age of consent for the purposes of “statutory rape” in § 2L1.2 is the age of consent as defined by statute. In defining “child” at seventeen, the Texas statute comports with both of these generic meanings.
*563 .Therefore, we conclude that it was not error for the district court to impose a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) for a crime of violence based on Rodriguez’s prior conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2).
III. Conclusion
For the foregoing reasons, Rodriguez’s sentence is AFFIRMED.

. Rodriguez was sentenced to two years of imprisonment for his 2003 Texas conviction for sexual assault of a child, resulting in three criminal history points, and was sentenced to thirty days of imprisonment for his 2008 Texas conviction for reckless driving, resulting in one criminal history point.

. The record contains support that the victim opposed sexual conduct that Rodriguez initiated. The PSR, which was adopted by the district court, stated “[t]he complainant alleged that she tried to push the defendant off her, but was unable to move him.” We acknowledge that the victim’s sworn affidavit filed in support of Rodriguez as an attachment to the PSR contains ambiguous statements, some of which indicate consent. We note, however, that under Taylor and its progeny, it is unclear whether we would be permitted to consider these facts to conclude that Rodriguez’s offense qualified for a crime-of-violence enhancement under U.S.S.G. § 2L1.2. This problem is a demonstration of the confusion and gymnastics that result from the categorical and modiñed-categorical approaches in their current form. Perhaps, the Supreme Court will provide clarity on this issue this Term in Descamps v. United States, -U.S.-, 133 S.Ct. 90, 183 L.Ed.2d 730 (2012) (granting certiorari). Nevertheless, we leave this issue for another day because, as explained infra, we may affirm Rodriguez’s sentence on the basis of either the "sexual abuse of a minor” or the "statutory rape” offense categories.

.Rodriguez's base offense level of eight, increased four levels pursuant to U.S.S.G. § 2L1.2(b)(1)(D) because of his prior felony conviction, decreased two levels for acceptance of responsibility pursuant to U.S.S.G. § 3El.l(a), results in an offense level of ten.

. Accordingly, we can affirm the application of the sixteen-level crime-of-violence enhancement if the offense defined in Texas Penal Code § 22.011(a)(2) constitutes "statutory rape” or "sexual abuse of a minor” for purposes of§ 2L1.2(b)(l)(A)(ii).

. Following United States v. Booker, we review sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We have held that “[a] non-Guideline[s] sentence” is unreasonable “(1) where it does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.” United States v. Smith, 440 F.3d 704, 708 (5th *548 Cir.2006) (citations omitted). Based on our review of the record, we find no basis for overturning the district court's discretion in selecting Rodriguez’s sentence because: (1) the factors the district court considered in selecting Rodriguez's sentence were all relevant, proper factors; (2) there are no other factors relating to Rodriguez that should have received significant weight; and (3) the district court did not err in balancing the sentencing factors.

. We recognize that our approach today conflicts with our approach in United States v. Lopez-DeLeon, in which we relied on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning” of the age of consent was sixteen for the purposes of the "statutory rape” category in § 2L1.2. 513 F.3d 472, 474-75 (5th Cir.2008). It also conflicts with our approach in United States v. Munoz-Ortenza, in which we looked to definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning” of “minor” was sixteen for the purposes of applying the "sexual abuse of a minor” category in § 2L1.2 to prior convictions involving oral copulation. 563 F.3d 112, 114-16 (5th Cir.2009). We have relied on both Lopez-DeLeon and Munoz-Ortenza in subsequent cases to hold that state statutes involving sexual crimes with persons over the age of sixteen are too broad to categorically constitute either "statutory rape” or "sexual abuse of a minor” under § 2L1.2. See, e.g., United States v. Chavez-Hernandez, 671 F.3d 494, 499-500 (5th Cir.2012). In light of today’s holding, these prior decisions are no longer valid precedent to the extent that they use approaches other than a plain-meaning approach to define the "generic, contemporary meaning” of the "statutory rape” and "sexual abuse of a minor” offense categories in § 2L1.2.

. Application note 1 of § 2L1.2 defines "crime of violence” as:
[A]ny of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.
U.S.S.G. § 2L1.2 cmt. n. l(B)(iii).

. In limited circumstances, we may take a modified categorical approach to determine "whether a plea of guilty to [an enumerated offense] defined by a nongeneric Statute necessarily admitted elements of the generic offense” by looking only to “the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.” Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); United States v. Miranda-Ortegon, 670 F.3d 661, 663 (5th Cir.2012) (citation omitted) ("We may take a modified categorical approach, permitting consultation of the allegations in the charging instrument, if the statute of conviction has disjunctive elements.”).

. Rodriguez does not challenge the "generic, contemporary meaning” of "sexual” or "abuse” in the “sexual abuse of a minor” offense category under the § 2L1.2 enhancement.

. We agree with Judge Owen that the language of the Guidelines enhancement at issue and its applicable commentary should always be the starting point when deriving the meaning of an undefined Guidelines term. We disagree with her characterization of our approach as looking to dictionary definitions first, and in so doing, transferring the vital function of the Judiciary to dictionary authors. In fact, our analysis explicitly uses the plain terms of the § 2L1.2 enhancement and its applicable commentary as the starting point — as any plain-meaning approach would. We view a plain-meaning approach — by first looking to the Guidelines themselves, then the relevant statutes at issue, and then definitions in legal and other well-accepted dictionaries when necessary — as the best method to derive the "generic, contemporary meaning” of undefined, non-common-law offense categories. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (1st ed. 2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation. It governs constitutions, statutes, rules, and private instruments.”). We are not alone in the struggle to define the meaning of these offense categories. As set forth infra, circuits have concluded that the meaning of these offense categories is unclear from the Guidelines and commentary themselves, and have adopted divergent methods to derive their meaning which, we believe, coheres persuasively in the plain-meaning approach we refine and offer. Compare United States v. Ramirez-Garcia, 646 F.3d 778, 782-83 (11th Cir.2011), United States v. Lopez-Solis, 447 F.3d 1201, 1206-07 (9th Cir.2006), United States v. Londono-Quintero, 289 F.3d 147, 153-54 (1st Cir.2002), and United States v. Martinez-Carillo, 250 F.3d 1101, 1104 (7th Cir.2001), with United States v. Rangel-Castaneda, 709 F.3d 373, 379-80, 2013 WL 829149, at *5 (4th Cir. Mar. 7, 2013).

.The Eighth Circuit in Montenegro-Recinos explained:
We have no difficulty concluding ... that a fourteen- or fifteen-year-old child has not reached the age of majority, which is eighteen years of age in most states. See United States v. Martinez-Carillo, 250 F.3d 1101, 1104-05 (7th Cir.2001), cert. denied, 534 U.S. 927, 122 S.Ct. 285, 151 L.Ed.2d 210 (2001) (and cases cited therein). Although the term "minor” is not specifically defined in § 2L1.2, other provisions of the sentencing guidelines, including the guideline for "criminal sexual abuse,” see U.S.S.G. § 2A3.1 comment, (n. 1), repeatedly and consistently define a minor as a person under eighteen years of age. See, e.g., U.S.S.G. §§ 2A3.4 comment, (n. 1); 2G2.1 comment, (n. 1); see also 18 U.S.C. § 2256(1).
Id. at 717-18.

. We agree with Judge Haynes that, ultimately, the United States Sentencing Commission has the power, and the empirical competence, to appropriately address the frustration and complexity perplexing this area of the law. As Judge Owen observes, the Sentencing Commission provided such clarification in light of our struggle to define the intended meaning of "forcible sex offense” in § 2L1.2.

. In various cases, the First, Seventh, Eighth, and Tenth Circuits have applied this *551 plain-meaning approach to define the "generic, contemporary meaning” of undefined offense categories enumerated in the Guidelines. See, e.g., Londono-Quintero, 289 F.3d at 153-54 (relying on the plain meaning of “sexual” and "abuse” as stated in Random House Webster’s Unabridged Dictionary to define the meaning of "sexual abuse of a minor” in the aggravated felony enhancement in U.S.S.G. § 2L1.2(b)(l)(A)); Martinez-Carillo, 250 F.3d at 1104 (looking to the definition of "minor” in Black’s Law Dictionary to define the generic meaning of "sexual abuse of a minor” in the "aggravated felony” enhancement under § 2L1.2); United States v. Graham, 982 F.2d 315, 316 (8th Cir.1992) (looking to the definition of "dwelling” in Black’s Law Dictionary to define the generic meaning of "burglary of a dwelling” in the § 4B1.1 crime-of-violence enhancement); United States v. Romero-Hernandez, 505 F.3d 1082, 1087-88 (10th Cir.2007) (looking to the dictionary definition of "sex offense” in Black's Law Dictionary to define the generic meaning of "forcible sex offense” in the § 2L1.2 crime-of-violence enhancement). We note that the Fourth Circuit has also applied this plain-meaning approach to define the "generic, contemporary meaning” of "sexual abuse of a minor” in § 2L1.2. United States v. Diaz-Ibarra, 522 F.3d 343, 348-49 (4th Cir.2008) (relying on the “common meaning” of the words "sexual” and “minor” as stated in Webster's Third New International Dictionary to define the meaning of "sexual abuse of a minor” in the § 2L1.2 crime-of-violence enhancement). Recently, however, the Fourth Circuit veered from this plain-meaning approach, and looked to the majority of state codes to conclude that the “generic, contemporary meaning” of the age of consent is sixteen for the purposes of "statutory rape” in § 2L1.2. Rangel-Castaneda, 709 F.3d at 379, 2013 WL 829149, at *5. This recent opinion is puzzling in that it recognizes that the simple strategy of "counting noses” will not work in all cases, acknowledges that states retain discretion to define the offense of statutory rape how they see fit, yet still relies on a state-by-state survey to define the "generic, contemporary meaning” of "statutory rape” in § 2L1.2. Id. In our view, this inconsistent rationale makes our court's harmonizing approach all the more important.

. The D.C. and Third Circuits have applied this multi-source approach to define the "generic, contemporary meaning” of undefined offense categories enumerated in the Guidelines. See, e.g., United States v. De Jesus Ventura, 565 F.3d 870, 876-77 (D.C.Cir.2009) (looking to definitions in the various state codes, the Model Penal Code, and federal law to define the generic meaning of "kidnapping” in the § 2L1.2 crime-of-violence enhancement). Compare United States v. Marrero, 677 F.3d 155, 165-66 (3d Cir.2012) (looking to the Model Penal Code, state laws, and criminal law treatises to reach a generic definition of "murder” in U.S.S.G. § 4B1.1), with United States v. McClenton, 53 F.3d 584, 587 (3d Cir.1995) (relying on the dictionary definition of “dwelling” to define the generic meaning of "dwelling” in "burglary of a dwelling”).

. In numerous cases, the Ninth and Eleventh Circuits have applied this mixed-method approach to define the "generic, contemporary meaning” of offense categories enumerated in the Guidelines. See, e.g., United States v. Corona-Sanchez, 291 F.3d 1201, 1204 (9th Cir.2002) (en banc), superseded on other grounds by U.S.S.G. § 2L1.2 cmt. n. 4 (2002) (explaining that the Ninth Circuit employs two different methods to derive the meaning of offense categories enumerated in sentencing enhancements depending on whether those categories reflect traditional offense categories defined at common law or non-traditional offense categories not defined at common law); Lopez-Solis, 447 F.3d at 1201, 1206-07 (characterizing "sexual abuse of a minor” as a non-traditional offense category and relying on dictionary definitions of "sexual” and "minor” to derive its generic meaning); Ramirez-Garcia, 646 F.3d at 782-83 (characterizing "sexual abuse of a minor” as a non-traditional offense category and relying on definitions in Webster’s Third New International Dictionary and Black’s Law Dictio *552 nary "to give words their plain meaning that comports with common usage” (citing United States v. Padilla-Reyes, 247 F.3d 1158 1163 (11th Cir.2001))).

. Under this approach, we may resort to many sources, including criminal law treatises, to determine whether an enumerated offense category is defined at common law or not. We acknowledge that identifying offense categories that are defined at common law-— and those that are not — is not always an easy task. However, the Supreme Court engaged in that task in Taylor, 495 U.S. at 592-96, 110 S.Ct. 2143; and the task will not risk wading into any multiplicity of early English law inasmuch as the enumerated offenses in question number only twelve, and the considerable number of those twelve are common law offenses. LaFave notes that one technique that is commonly used to determine whether an offense qualifies as a common-law crime "is to look at books by recognized writers on English crimes, especially Blackstone, to determine the existence and definition of a common law crime.” Criminal Law, § 2.1(e) (5th ed. 2010). Moreover, "[i]f the court finds an English case directly in point decided before 1607 (or, in some states, 1775), holding that the activity in question constituted a common law crime, clearly this would qualify as a common law crime.” Id.
To facilitate the application of this method to future cases, we note LaFave identifies the following felonies at common law: murder, suicide, manslaughter, burglary, arson, robbery, larceny, rape, sodomy and mayhem. Id. § 2.1(b). He identifies the following misdemeanors at common law: assault, battery, false imprisonment, libel, perjury, and intimidation of jurors. Id. Moreover, Blackstone’s Commentaries recognizes the following common-law offenses: obstructing process, receiving stolen goods, conspiracy, perjury, bribery, extortion [categorized as offenses against public-justice], 4 William Blackstone, Commentaries on the Laws of England 127-41 (1st American ed. 1772) (reprint 1992); suicide, murder, manslaughter [homicide], id. at 176-204; mayhem, abduction, rape, assault, false imprisonment, kidnapping [offenses against the persons of individuals], id. at 205-19; arson, burglary [offenses against the habitations of individuals]; id. at 220-29; larceny/theft, robbery, malicious mischief, forgery [offenses against private property], id. at 229-47.

. We limit our holding today to offense categories that are not defined at common law. Accordingly, our precedent that looks to definitions in the variety of state codes, the Model Penal Code, federal law, and criminal law treatises to define the "generic, contemporary meaning” of offense categories defined at common law remains intact. See, e.g., United States v. Esparza-Perez, 681 F.3d 228, 229-30 (5th Cir.2012) (looking to the Model Penal Code, LaFave and Scott treatises, modem state codes, and dictionary definitions to derive the "generic, contemporary meaning” of "aggravated assault” in the U.S.S.G. § 2L1.2 enhancement); United States v. Gonzalez-Ramirez, 477 F.3d 310, 317-18 (5th Cir.2007) *553 (looking to the .Model Penal Code, modern state codes, and LaFave's criminal law treatise to derive the "generic, contemporary meaning” of "kidnapping” in the § 2L1.2 enhancement). We leave the mechanics of how we derive the "generic, contemporary meaning” of common-law offense categories for another day. Further, we emphasize that our decision today cannot resolve all of the confusion that originates from the lack of guidance on how to apply Taylor's categorical approach across different offense categories. We stress, however, that bringing our case law involving non-common-law offense categories in line with the majority of circuits fosters uniformity in the application of Taylor's categorical approach. Most recent Federal Judicial Caseload Statistics report that just almost two-thirds (63%) of the total federal criminal appeals commenced annually originate from the circuits that take now a plain-meaning approach when deriving the "generic, contemporary meaning” of non-common-law offense categories — including the First, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. See Administrative Office of the United States, Federal Judicial Caseload Statistics 2011, tbl. B-l: U.S. Courts of Appeals — Appeals Commenced, Terminated, and Pending, by Circuit During the 12-Month Period Ending March 31, 2011 (March 31, 2011) (available at http://www. uscourts.gov/Viewer.aspx? doc =/uscourts/ Statistics/FederalJudicialCaseloadStatistics/ 2011/tables/B01Marll.pdf). Almost one half (44%) of the total criminal appeals originate from the Fifth, Ninth, and Eleventh Circuits alone. See id. (reporting a total of 12,578 criminal appeals commenced in all circuits between March 31, 2010 and March 31, 2011, and of those appeals, 2,489 commenced in the Fifth Circuit, 1,609 commenced in the Ninth Circuit, and 1,501 commenced in the Eleventh Circuit).

. Although Taylor considered whether a conviction qualified as a "violent felony” under the ACCA, we have applied its analysis when interpreting the meaning of offense categories enumerated in the Sentencing Guidelines. See United States v. Ortega-Gonzaga, 490 F.3d 393, 394-95 (5th Cir.2007) (applying Taylor to determine whether the defendant’s prior state conviction was the enumerated felony of "burglary of a dwelling” in the § 2L1.2 crime-of-violence enhancement).

. We are convinced, as to the non-common-law offense categories of "sexual abuse of a minor” and "statutory rape,” that our labors in cataloguing state and federal criminal laws and learned treatises would not further Taylor’s goal of uniformity. If, as Rodriguez argues, that search would show that Texas Penal Code § 22.011(a)(2) is categorically overbroad as compared to the generic offenses, because it includes victims over the age of sixteen, then under Taylor’s categorical approach no conviction under § 22.011(a)(2) could qualify for a crime-of-violence sentencing enhancement under § 2L1.2(b)(l)(A)(ii), no matter the actual victim’s age. See United States v. Fierro-Reyna, 466 F.3d 324, 327 (5th Cir.2006). Corresponding Mississippi law, by contrast, generally caps the age of the victim at sixteen, fitting within Rodriguez’s proposed generic definition of "minor.” See Miss.Code Ann. § 97-3-65(1) (statutory rape); id. § 97-3-95(1) (sexual battery). Accordingly, a defendant convicted in Mississippi of having sexual intercourse with a thirteen-year-old would be subject to a crime of violence enhancement, while a defendant convicted in Texas of the same conduct would not. Another oddity, highlighting the difficulty in collecting and meaningfully analyzing disparate criminal statutes dealing with sexual offenses involving minors, is that the federal crime of "sexual abuse of a minor or ward” excludes from its definition of "minor” persons younger than twelve years old. See 18 U.S.C. § 2243(a). A final example is that tabulating jurisdictions may not account for whether the most populous states have chosen to adhere to the "majority” view. See United States v. Viezcas-Soto, 562 F.3d 903, 914 (8th Cir.2009) (Gruender, J., dissenting) ("It seems to me that a definition of 'statutory rape’ that excludes the statutory rape laws of seventeen states, including the most populous state in the Union [California], along with Texas (which sets the age of consent at seventeen), New York (seventeen), Florida (eighteen), and Illinois (seventeen), cannot reasonably be classified as ‘generic.’ ”). These persistent complexities strengthen our conclusion that the majority of our sister circuits are correct, and that Taylor could not have called for the Sisyphean task of examining each jurisdiction's law where it concerns non-common-law offense categories.

. See, e.g., Alaska Stat. §§ 11.41.434, 11.41.436, 11.41.438, 11.41.440 (using the label "sexual abuse of a minor”); Ariz. Stat. Ann. § 13-1405 (“sexual conduct with a minor”); Cal.Penal Code § 261.5 ("sexual intercourse with person under 18”); Conn. Gen. Stat. §§ 53a-70 to 53a-72 ("sexual assault”); Fla. Stat. § 794.05 ("unlawful sexual activity with certain minors”); Haw.Rev.Stat. §§ 707-730; 707-733.6 ("sexual assault” and “continuous sexual assault of a minor under the age of fourteen years”); Iowa Code § 709.4 ("sexual abuse”); La.Rev.Stat. Ann. § 14:80 (“carnal knowledge of a juvenile”); Me. Rev. Stat. tit. 17-A, § 253 ("gross sexual assault”); Mass. Gen. Laws ch. 272, § 4 (“inducing person under eighteen to have sexual intercourse”); Miss.Code Ann. § 97-3-95 ("sexual battery”); Tex Penal Code § 22.011 ("sexual assault”); Vt. Stat. Ann. tit. 13, § 3252 ("sexual assault”); W. Va.Code § 61-8B-3 ("sexual assault”); Wyo. Stat. Ann. § 6-2-303 ("sexual assault”).

. We disagree with the conclusion in Judge Graves’s concurrence in part and concurrence in the judgment that "statutory rape” is an offense category defined at common law, rendering our plain-meaning approach inapplicable, for additional reasons. First, that concurrence erroneously presumes that the crime of "statutory rape” was uniformly incorporated into American law as a consequence of being codified in English law before 1607. For example, a number of states *559 incorporate the common law of England into their state law, but do not explicitly incorporate English statutes, whether enacted before 1607 or another date. See, e.g., Ala.Code § 1-3-1; Cal. Civ.Code § 22.2; Haw.Rev.Stat. § 1-1; Idaho Code § 73-116; Mont.Code Ann. § 1-1-109; Neb.Rev.Stat. § 49-101; S.C.Code Ann. § 14-1-50; Tex. Civ. Prac. & Rem.Code Ann. § 5.001; Va.Code Ann. § 1-200. Second, we disagree with the concurrence's characterization of our approach as relying solely and improperly on a distinction "between judge-created offenses and statutory offenses.” Our decision to characterize "statutory rape” as a non-common-law offense category is not only based on the ground that "statutory rape” is a statutory creation, but also on the point that "statutory rape” lacks a mens rea requirement. Supreme Court and our precedent have recognized that mens rea is an essential component of common-law offenses. See Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (explaining that courts construe statutes "in light of the background rules of the common law, ... in which the requirement of some mens rea for a crime is firmly embedded”); United States v. Garrett, 984 F.2d 1402, 1410 (5th Cir.1993) ("The requirement of mens rea as a predicate to criminal liability is a fundamental precept of the Anglo-American common law.” (internal citation omitted)); see also J.W.C. Turner, The Mental Element in Crimes at Common Law, 6 Cambridge L.J., 81, 82-83 (1936) (recognizing that the "rules on which liability depends in crimes at common law” "require evidence as to the state of a [defendant's] mind.”). For example, these states have held either that statutory rape is not a common-law offense, or distinguished statutory rape from the common-law offense of rape. See Drake v. State, 239 Ga. 232, 236 S.E.2d 748, 750 (1977); State v. Rufus, 205 Wis. 317, 237 N.W. 67, 73 (1931); State v. Lanto, 98 N.J.L. 401, 121 A. 139, 140 (1923); State v. Pickett, 11 Nev. 255, 257-58 (Nev.1876); Commonwealth v. Exler, 243 Pa. 155, 89 A. 968, 969-71 (1914).

. The panel concurrence challenges that our prior decisions defining “minor” in "sexual abuse of a minor” under § 2L1.2 are "unsupported by proper analysis.” 698 F.3d at 223, vacated by 701 F.3d 1080 (granting rehearing en banc). Specifically, the panel concurrence asserts that we have relied on our prior decision in United States v. Martinez-Vega, 471 F.3d 559, 562 (5th Cir.2006), to reject as foreclosed any argument that Texas Penal Code § 22.011(a)(2) does not categorically constitute "sexual abuse of a minor” under § 2L1.2, even though the definition of "minor” was never at issue in Martinez-Vega. Moreover, it challenges the Taylor analysis in our prior decision in United States v. Zavala-Sustaita, 214 F.3d 601 (5th Cir.2000). In that case, we held that a defendant's prior conviction under Texas Penal Code § 22.11(a)(2), which prohibits "indecency with a child,” qualified as "sexual abuse of a minor” on the grounds that " ‘a child younger than 17 years,’ is clearly a 'minor.' ” Id. at 604. Although we do not agree that those decisions are insufficient or unsound, our approach provides further methodological justification and analysis to support the conclusion that the "generic, contemporary meaning” of the term "minor” is a person under the age of majority.

. We note that our decision harmonizes with many other Guidelines enhancements involving criminal violence against children that define "minor'' as a person under the age of eighteen. For instance, the § 2L1.2 enhancement provides for an enhancement if a defendant previously was deported, or unlawfully remained in the United States, after a "child pornography offense.” U.S.S.G. § 2L1.2(b)(l)(A)(iv). Application Note 1 defines "child pornography offense” as "(I) an offense described in 18 U.S.C. § 2251, § 2251A, § 2252, § 2252A, or § 2260; or (II) an offense under state or local law consisting of conduct that would have been an offense under any such section if the offense had occurred within the special maritime and territorial jurisdiction of the United States.” U.S.S.G. § 2L1.2 cmt. n. l(B)(ii). Federal law defines "minor” as a person under the age of eighteen for the purpose of offenses defined in § 2251 ("sexual, exploitation of children”), § 2251A ("selling or buying of children”), § 2252 ("certain activities relating to material involving the sexual exploitation of minors”), § 2252A ("certain activities relating to material constituting or containing child pornography”), and § 2260 ("production of sexually explicit depictions of a minor for importation into the United States”). Id. § 2256(1). See also, e.g., U.S.S.G. §§ 2A3.1, 2A3.3, 2A3.4 (involving criminal sexual abuse); 2A3.5 (registration as a sex offender); 2G1.3 .(promoting a commercial sex act or prohibited sexual conduct); 2G2.1 (sexual exploitation of a minor); 4B1.5 (repeat and dangerous sex offender against minors); 5D1.2 (supervised release). Similarly, 18 U.S.C. § 3553 outlines special considerations in sentencing defendants convicted of "[c]hild crimes and sexual offenses,” including under § 1201 (kidnapping) and § 1591 (sex trafficking), both of which contain provisions specially applicable when the victim is under the age of eighteen. See 18 U.S.C. §§ 1201(g), 1591(a), 3553(b)(2)(A).

. We also observe that this plain-meaning approach is consistent with the approach of the U.S. Sentencing Commission, which broadly defines various sentencing enhancements involving sexual crimes against minors to include persons under the age of eighteen. In 2000, for instance, the Commission amended multiple enhancements in U.S.S.G. §§ 2A3 and 2G1 involving sexual abuse of children pursuant to a congressional directive in the Protection of Children from Sexual Predators Act of 1998, Pub.L. 105-314 ("the Act”). U.S.S.G.App. C., Amend. 592. The Act directed the Commission to review the Sentencing Guidelines to create penalties for various federal sexual offenses involving children, some of which defined “minor” at the age of eighteen. Pub.L. 105-314; see, e.g., 18 U.S.C. § 2422(b) (involving the offense of "coercion and enticement” and defining the victim as "an individual who has not attained the age *561 of 18 years”); § 2423(a) (involving the offense of "transportation with intent to engage in criminal sexual activity" and defining the victim as "an individual who has not attained the age of 18 years”). In response to this congressional directive, the 2000 Guidelines added enhancements involving sexual offenses using the specific term “minor,” which the Commission defined as an "individual who had not attained the age of 18 years.” See U.S.S.G.App. C., Amend. 592.

.In United States v. Alvarado-Hernandez, 465 F.3d 188, 189-90 (5th Cir.2006), we applied our "common-sense approach” to conclude that the defendant's conviction qualified as "statutory rape” under § 2L1.2 based on facts in the indictment that the case involved a fourteen-year-old victim. The panel concurrence criticizes Alvarado-Hemandez for failing to provide a categorical analysis of why the statute of conviction embodied the "generic, contemporary meaning” of "statutory rape.” See Rodriguez, 698 F.3d at 223-24, vacated by 701 F.3d 1080 (granting rehearing en banc). As explained previously, we are skeptical that Taylor and its progeny lead to reasonable results if lower courts must disregard facts that show that the defendant's conduct, in essence, constituted a crime of violence. Rooting the crime-of-violence determination strictly in the elements of the statute alone has required us to perform gymnastics when evaluating when a defendant’s prior conviction constitutes a crime of violence under the Guidelines. Although we do not agree that our holding in Alvarado-Hernandez is insufficient or unsound, our approach provides further methodological justification and analysis to support the conclusion that the "generic, contemporary meaning” of the age of consent for the purposes of “statutory rape” in the § 2L1.2 enhancement is defined as a person under the age of majority as defined by statute.

. We acknowledge" that one possible weakness of relying on the plain language of the Black’s Law Dictionary definition of "statutory rape” is that it could conceivably result in the application of the § 2LI.2 enhancement to a prior conviction based on an outlier statute that sets the age of consent above the age of majority. At the present, this is only a hypothetical given that no jurisdiction currently sets the age of consent above the age of eighteen for the purposes of statutory rape (or its equivalent). See Lopez-DeLeon, 513 F.3d at 475 n. 3 (providing a nationwide survey of each jurisdiction's statutory rape laws (or its equivalent) showing that thirty-four jurisdictions set the age of consent at sixteen, six jurisdictions set the age of consent at seventeen, and eleven jurisdictions set the age of consent at eighteen).

. Although we agree with the Ninth Circuit's general method in looking to definitions in legal and other well-accepted dictionaries to define the "generic, contemporary meaning” of "statutory rape,” we disagree with its particular application of those definitions. In United States v. Rodriguez-Guzman, the Ninth Circuit relied on Black's Law Dictionary's definition of "age of consent” to conclude that the "generic, contemporary meaning” of "minor” in the context of statutory rape is a person under the age of sixteen. 506 F.3d *562 738, 746-47 (9th Cir.2007). Black’s Law Dictionary (9th ed. 2009) defines "age of consent" as "[t]he age, usu. defined by statute at 16 years, at which a person is legally capable of agreeing to marriage (without parental consent) or to sexual intercourse.” We reject the Ninth Circuit’s reliance on this definition of "age of consent” because the Black's Law Dictionary definition of "statutory rape” states explicitly that the age of consent in the specific context of statutory rape is to be defined by statute. Black's Law Dictionary's definition of "age of consent” encompasses contexts that are inapposite to sexual intercourse, such as marriage. We conclude that it is improper to rely on this broader definition when the plain language of the definition of "statutory rape” provides for a narrower meaning of "age of consent.” We also note that the Model Penal Code explicitly highlights variability in the age of consent and the need to look to the statute at issue to determine its value. See Model Penal Code § 213.3(1). It provides, generally, for victims less than sixteen years old, but allows for victims of less than twenty-one years old in the case in which the defendant is “his guardian or otherwise responsible for general supervision of his welfare,” and places no age maximum in other circumstances. Id. We note finally that it also disclaims any notion of a pre-existing "generic” single statutory rape scheme. See § 213.1 explanatory note.

. As explained previously, Rodriguez also claims that the offense defined in Texas Penal Code § 22.011(a)(2) is broader than the "generic, contemporary meaning” of "sexual abuse of a minor” because the statute requires a three-year, as opposed to a four-year, age differential between the victim and the defendant. We reject this argument because the definitions of “sexual abuse of a minor” in legal and other well-accepted dictionaries do not include such an age-differential requirement.

. See U.S. Sentencing Guidelines Manual app. C at 393 (2003) (stating that changes to the definition of “crime of violence” were necessary because “[t]he previous definition often led to confusion over whether the specified offenses listed in that definition, particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense 'the use, attempted use, or threatened use of physical force against the person of another' ”); U.S. Sentencing Guidelines Manual app. C supp. at 296 (2008) (explaining that additional amendments to the definition of “crime of violence” were made with "input the Commission has received from federal judges, prosecutors, defense attorneys, and probation officers at several roundtable discussions and public hearings on the operation of§ 2L1.2”).