## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-40936

United States Court of Appeals
Fifth Circuit

**FILED**
January 6, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

LEONEL GONZALEZ-MANCILLA,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CR-255

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Leonel Gonzalez-Mancilla appeals from his criminal sentence for illegal reentry after deportation pursuant to 8 U.S.C. § 1326(a) and (b). He asserts that the trial court committed reversible error when it assessed him one criminal history point for each of two prior Wisconsin misdemeanor convictions. Because the convictions were for disorderly conduct offenses and should have been excluded from the sentencing calculations, we REVERSE and REMAND for resentencing.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40936

## I. Background

Leonel Gonzalez-Mancilla ("Gonzalez-Mancilla"), a Mexican citizen, pleaded guilty without a plea agreement to illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b). Applying the United States Sentencing Commission, *Guidelines Manual*, ("U.S.S.G." or "Guidelines"), the presentence report ("PSR") calculated a total offense level of 24 and placed Gonzalez-Mancilla in criminal history category IV. Based on his total offense level and criminal history category, Gonzalez-Mancilla's recommended Guidelines range was 77 to 96 months of imprisonment.

Among other things, the PSR assessed Gonzalez-Mancilla one criminal history point each under U.S.S.G. § 4A1.1(c) for his 2004 Wisconsin misdemeanor offense, resulting in a $385 fine, and his 2005 Wisconsin misdemeanor offense, resulting in a $969 fine. The complaint for the 2004 offense states that Gonzalez-Mancilla verbally argued with his then-girlfriend, "pushed her into the wall and at one point grabbed her head and slammed her head against the wall, making a hole." The complaint for the 2005 offense states that Gonzalez-Mancilla showed up at his estranged wife's place of employment, called her "a bitch and a fat whore," and then warned her that she "better watch her back and he would be waiting for her when she gets off work." Also according to the complaint, around the same time, Gonzalez-Mancilla went to a bar that his wife was in and threatened to shoot her in the head. When police located and arrested Gonzalez-Mancilla several hours later, they found a handgun in his vehicle.

The judgments of conviction for the 2004 and 2005 offenses show that, for both, Gonzalez-Mancilla pleaded no contest to "Disorderly Conduct [968.075(1)(a) – Domestic Abuse]." They list the violation as "947.01" and the severity as a Class B misdemeanor. The criminal complaints for both offenses include a single count of "disorderly conduct, domestic abuse." The complaints

No. 12-40936

further provide that Gonzalez-Mancilla's actions were "contrary to" Wisconsin Statute §§ 947.01 and 968.075(1)(a).  They provide that by "invoking the provisions of [§] 968.075(1)(a) . . . , because this charge is an act of domestic abuse, costs upon conviction would include the domestic abuse assessment imposed under [§] 973.055(1)."

Before Gonzalez-Mancilla was sentenced, he submitted written objections to the PSR's assessment of one criminal history point each for his two prior Wisconsin misdemeanor offenses.  He argued that the offenses were excludable "disorderly conduct" offenses under U.S.S.G. § 4A1.2(c)(1).  The Government responded that the offenses were distinguishable from "disorderly conduct" offenses under U.S.S.G. § 4A1.2(c)(1) because they were considered "domestic abuse incidents" under Wisconsin law.  The probation officer advanced the same distinction in an addendum to the PSR.  The probation officer also explained that Wisconsin's domestic abuse statute was similar to Texas's assault statute, which is a scored offense.  The officer noted that Gonzalez-Mancilla had physically confronted his victim and made knowing and intentional threats.

During the sentencing hearing, Gonzalez-Mancilla reurged his objection to the assessment of two criminal history points for his prior Wisconsin misdemeanor convictions.  The district court overruled that objection.  The district court sustained a separate objection by Gonzalez-Mancilla, reducing his offense level to 21 and resulting in a Guidelines range of 57 to 71 months.  The district court sentenced Gonzalez-Mancilla at the bottom of the Guidelines range to 57 months in prison and imposed a $100 special assessment. Gonzalez-Mancilla timely appealed his sentence.

## II. Standard of Review

3

No. 12-40936

The parties acknowledge that Gonzalez-Mancilla raised in the district court his objections to the assessment of criminal history points for his prior Wisconsin misdemeanor convictions. For properly preserved objections, this court reviews de novo a sentencing court's interpretation and application of the Guidelines. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012).

### III. Discussion

Gonzalez-Mancilla challenges on appeal the district court's assessment under U.S.S.G. § 4A1.1(c) of one criminal history point for each of his two prior Wisconsin misdemeanor convictions. Under the Guidelines' criminal history scoring rules, a prior conviction resulting in a sentence of a fine is ordinarily scored one criminal history point. U.S.S.G. § 4A1.1(c); § 4A1.1 cmt. 5. However, under certain conditions, a prior misdemeanor offense will not trigger the assessment of a criminal history point when the prior offense is: (1) an enumerated offense under U.S.S.G. § 4A1.2(c)(1) or (2) similar to such an offense.[1] A criminal history point will not be assessed for a listed misdemeanor offense, unless "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days" or "the prior offense was similar to an instant offense." U.S.S.G. § 4A1.2(c)(1)(A), (B). Gonzalez-Mancilla and the Government both acknowledge that Gonzalez-Mancilla was not sentenced to probation or imprisonment for his prior Wisconsin misdemeanor offenses and that those offenses are not similar to the offense of illegal reentry after deportation. The question in this appeal is whether or not Gonzalez-Mancilla's prior Wisconsin misdemeanor offenses are for a listed offense under U.S.S.G. § 4A1.2(c), or are "similar to" such an offense.

---

[1] The offenses listed in U.S.S.G. §4A1.2(c)(1) are: "Careless or reckless driving"; "Contempt of court"; "Disorderly conduct or disturbing the peace"; "Driving without a license or with a revoked or suspended license"; "False information to a police officer"; "Gambling"; "Hindering or failure to obey a police officer"; "Insufficient funds check"; "Leaving the scene of an accident"; "Non-support"; "Prostitution"; "Resisting arrest"; and "Trespassing."

A road map to the arguments here is useful. Gonzalez-Mancilla argues that because each of his prior Wisconsin misdemeanor offenses is a listed offense, § 4A1.2(c)(1)(A) governs and the offense therefore does not trigger an additional criminal history point under § 4A1.1(c). The Government, seeking to add the criminal history point for each conviction, argues that the conviction is neither a listed offense nor similar to a listed offense under § 4A1.2(c)(1)(A) and therefore qualifies for an additional criminal history point under § 4A1.1(c).

Turning to Gonzalez-Mancilla's Wisconsin misdemeanor convictions, he argues that he was convicted solely of disorderly conduct under § 947.01 and that "disorderly conduct" is an offense listed under U.S.S.G. § 4A1.2(c)(1). He contends that the references in the charging documents and judgments of conviction to "domestic abuse" and to § 973.055 and § 968.075 relate to sentencing enhancements and other issues, and not to offenses for which he was charged and convicted.

The Government and the district court, by contrast, adopt the reasoning of the PSR that Gonzalez-Mancilla was twice convicted of "disorderly conduct-domestic abuse," which is distinguishable from disorderly conduct as listed in U.S.S.G. § 4A1.2(c)(1). In reaching this conclusion, the Government points to references in the charging documents and judgments of conviction to the domestic abuse surcharge statute, Wis. Stat. § 973.055, and the domestic abuse incidents statute, § 968.075. Unlike disorderly conduct, domestic abuse is not exempted as an enumerated offense under U.S.S.G. § 4A1.2(c)(1).

In resolving this issue, we first consider whether Gonzalez-Mancilla was convicted of a criminal offense under Wisconsin Statute § 968.075. Section 968.075—entitled "domestic abuse incidents; arrest and prosecution"—defines "domestic abuse" as one of several acts "engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the

person resides or formerly resided or against an adult with whom the person has a child in common." *Id*. § 968.075(1)(a). Acts qualifying as "domestic abuse" include: (1) "intentional infliction of physical pain, physical injury or illness"; (2) "intentional impairment of physical condition"; (3) sexual assault; and (4) "a physical act that may cause the other person reasonably to fear imminent engagement in the conduct described under [subdivisions] 1, 2, or 3." *Id*. § 968.075(1)(a)(1)–(4).

Although § 968.075 defines "domestic abuse," it does not create criminal liability. The statute principally sets out policies for police and district attorney's offices to follow in making domestic abuse arrests and prosecutions. See *id*. § 968.075(2)–(4), (6)–(9). The sole provision directed at criminal defendants, § 968.075(5)(a), imposes a 72-hour contact prohibition on anyone *arrested for* (not convicted of) domestic abuse.[2] *See State v. Neis*, No. 09AP1287–CR, 2010 WL 2772679, at *4 (Wis. App. July 15, 2010) (holding that while "§ 968.075(1)(a) appears in the court documents, the statute . . . plainly governs law enforcement procedures in domestic abuse cases . . . [and] does not create criminal liability for the domestic abuse perpetrator"); *State v. Auger*, No. 03-3306-CR, 2004 WL 1057878, at *2 n.4 (Wis. App. May 11, 2004) (holding that "[t]o the extent [the defendant] challenges the notation as adding domestic abuse as an element of disorderly conduct, the judgment of conviction correctly notes his actions were a violation of § 947.01, *not* § 968.075").[3] Thus, the fact

---

[2] Section 968.075(5)(a)(2) makes individuals who intentionally violate the 72-hour contact prohibition criminally liable for fines of up to $10,000 and imprisonment of up to 9 months. There is no suggestion in the record or in the parties' briefs that Gonzalez-Mancilla was convicted of violating the contact prohibition.

[3] The Government points us to *State v. VanEperen*, 2006AP2659–CR, 2007 WL 1892475 (Wis. App. July 3, 2004), in which a Wisconsin appeals court reversed a dismissal of a complaint charging misdemeanor disorderly conduct and also referencing Wisconsin Statute § 968.075. In concluding that there were sufficient facts to support the complaint, the court discussed, inter alia, the elements for showing "domestic abuse" under § 968.075.

No. 12-40936

that Gonzalez-Mancilla's conduct may have been referred to in the state court documents as "domestic abuse" under § 968.075 does not show that he was convicted of an offense called "domestic abuse."

Next, we consider whether Gonzalez-Mancilla was convicted of a criminal offense under § 973.055, Wisconsin's "domestic abuse assessments" statute. Section 973.055 provides that a court "shall impose a domestic abuse surcharge" if two conditions are met: (1) the defendant is sentenced under an offense listed in the statute and (2) "[t]he court finds that the conduct constituting the violation . . . involved an act by the adult person against his or her spouse or former spouse, against an adult with whom the adult person resides or formerly resided or against an adult with whom the adult person has created a child." *Id.* § 973.055(1)(a)(1), (1)(a)(2). Domestic abuse surcharges were imposed on Gonzalez-Mancilla because disorderly conduct is an offense listed in § 973.055(1) and because the acts underlying his two offenses were against his live-in girlfriend and wife, respectively.

We are persuaded by Gonzalez-Mancilla's position that § 973.055 is a sentencing statute rather than a statute of conviction. In *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998), the Supreme Court considered whether the statutory provision at issue in that case, 8 U.S.C. § 1326(b)(2), "defines a separate crime or simply authorizes an enhanced penalty." The Court explained that "[i]n answering this question, we look to the statute's language, structure, subject matter, context, and history—factors that typically help courts determine a statute's objectives and thereby illuminate its text." *Almendarez-Torres*, 523 U.S. at 228. Applying this analysis, it is clear that the Wisconsin legislature did not intend § 973.055 to create a stand-

---

To read *VanEperen* as requiring the allegation of the elements of the domestic abuse statute in order to charge a disorderly conduct violation would put it in conflict with *Auger*, *Neis*, and the language of § 968.075, and we do not read it that way.

No. 12-40936

alone offense.[4] By its own language, the statute imposes an "assessment" or "surcharge" on adult persons "sentenced" for violating certain crimes. Additionally, § 973.055 commits to a judge (rather than to a jury) the decision of whether the conditions have been satisfied for imposing a domestic violence surcharge. *Id.* § 973.055(1), (1)(a)(2), *see also Auger*, 2004 WL 1057878, at *2 & n.4 (holding that because § 973.055 "explicitly grants this *sentencing* authority to the court[,] there is nothing for a jury to deliberate"). As a result, we find that Gonzalez-Mancilla's prior Wisconsin convictions were solely for disorderly conduct offenses.

The Government further argues that Gonzalez-Mancilla's prior Wisconsin misdemeanor offenses fall outside the generic offense of disorderly conduct because they involved violent and threatening acts. Thus, in the Government's view, we should affirm the district court's sentence even if Gonzalez-Mancilla's offenses are properly characterized under state law as "disorderly conduct."

Gonzalez-Mancilla acknowledges that Wisconsin's misdemeanor disorderly conduct statute criminalizes violent conduct. At the time of his conviction, the statute provided as follows:

> Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise

---

[4] The Government responds by pointing to the Eighth Circuit's holding in *United States v. Frausto-Vasquez*, 435 F. App'x 575, 577 (8th Cir. 2011), that a reference to § 968.075(1)(a) in a state court disorderly conduct complaint was relevant to determining, using the modified categorical approach, whether the prior offense was a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(E). The Eighth Circuit sidestepped the defendant's argument that because § 968.075 was merely a "procedural statute," it did not add an element to his disorderly conduct discharge. The court explained that the reference to § 968.075 was material under the modified categorical approach because Wisconsin's disorderly conduct statute criminalizes both violent and nonviolent conduct, while only the former is a "crime of violence" for sentencing purposes. *Frausto-Vasquez* is inapposite because the present case does not involve the application of the modified categorical approach, which permits courts in limited circumstances to look beyond the elements of the statute of conviction.

8

disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

Wis. Stat. § 947.01 (2005). Nevertheless, Gonzalez-Mancilla contends that the generic offense of "disorderly conduct" is sufficiently broad to encompass even violent and threatening behavior.

In *United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013), our en banc court recently clarified our approach to determining whether an offense of conviction is an enumerated offense under the Guidelines. We described this approach as follows:

> First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law. Third, if the offense category is a non-common-law offense category, then we derive its "generic, contemporary meaning" from its common usage as stated in legal and other well-accepted dictionaries. Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category.

*Id.* at 552–53 (footnotes omitted). We further explained that "we may resort to many sources . . . to determine whether an enumerated offense category is defined at common law or not." *Id.* at 552 n.16. These sources may include "definitions in the variety of state codes, the Model Penal Code, federal law, and criminal law treatises." *Id.* at 552 n.17.

Applying this approach here, we initially note that the Guidelines and the relevant commentary do not define the offense of disorderly conduct as enumerated in U.S.S.G. § 4A1.2(c). S*ee United States v. Grob*, 625 F.3d 1209, 1215 (9th Cir. 2010). Nor is disorderly conduct an offense category defined at

No. 12-40936

common law. *See Rodriguez*, 711 F.3d at 552 n. 16 (omitting disorderly conduct from its lists of common law offenses); *see also* Wayne R. LaFave, 1 Subst. Crim. L. § 2.1 n. 67 (2d ed. 2003) (acknowledging the Virginia Supreme Court's holding in *Lewis v. Commonwealth*, 34 S.E.2d 389 (Va. 1945), that disorderly conduct was not a common law crime). To determine the "generic, contemporary meaning" of disorderly conduct, we look to its common usage as stated in legal and other well accepted dictionaries.

Black's Law Dictionary provides that disorderly conduct refers to "[b]ehavior that tends to disturb the public peace, offend public morals, or undermine public safety." Black's Law Dictionary 337 (9th ed. 1991). Disorderly conduct incorporates the common law offense of breaching the peace, which takes place "when either an assault is committed on an individual or public alarm and excitement is caused." *Id.* An older edition of Black's construes disorderly conduct in reference to the Model Penal Code. *See* Black's Law Dictionary 469 (6th ed.). The Model Penal Code, in turn, defines "disorderly conduct" in the following manner:

> A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by an act which serves no legitimate purpose of the actor.

No. 12-40936

Model Penal Code § 250.2(2).[5] These dictionary sources support Gonzalez-Mancilla's position that the "generic, contemporary meaning" of disorderly conduct includes fighting and using abusive language.[6]

Gonzalez-Mancilla further contends that this circuit previously recognized in *United States v. Reyes-Maya*, 305 F.3d 362 (5th Cir. 2002), that "disorderly conduct" can include violent and threatening behavior. The defendant in that case, who was charged with illegal reentry following deportation, appealed the assessment of one criminal history point for a prior misdemeanor conviction under Texas's criminal mischief statute, Tex. Penal Code § 28.03 (1992). This court reversed on the ground that the defendant's criminal mischief conviction was sufficiently similar to the listed offense of "disorderly conduct" to be excludable under U.S.S.G. § 4A1.2(c)(1). 305 F.3d at 368. In doing so, this court noted that "[d]isorderly conduct need not be violent, but can include violent acts such as discharging a firearm in a public place." *Id.* at 367. *Reyes-Maya* provides additional support for Gonzalez-Mancilla's position that the generic offense of disorderly conduct includes violent conduct.

Lastly, the Government argues that we should apply the multifactor approach that this circuit developed in *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir. 1991), to decide whether Gonzalez-Mancilla's prior offenses

---

[5] Gonzalez-Mancilla further cites to Wharton's Criminal Law's "disorderly conduct" definition, which includes: "fighting or violent or disruptive behavior; making loud or unreasonable noise; using offensive, abusive, or obscene language, or making an obscene gesture." Charles E. Torcia, 4 *Wharton's Criminal Law* § 505 (15th ed. 2006).

[6] At oral argument, Gonzalez-Mancilla also pointed to the federal prohibition on disorderly conduct in national parks. That prohibition provides, in relevant part, that "[a] person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or threatening, or in violent behavior [or] . . . [u]ses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace." 36 C.F.R. § 2.34.

are "similar to" an enumerated offense under U.S.S.G. § 4A1.2(c).   The *Hardeman* factors were developed to determine whether a defendant's conduct was "similar to" an enumerated offense under U.S.S.G. § 4A1.2(c)(1).  *See id.* at 281; *see also* U.S.S.G § 4A1.2(c)(1) cmt. 12.   Gonzalez-Mancilla's primary argument, however, is that his prior disorderly conduct offenses were both for the listed offense of "disorderly conduct" (not merely "similar to" such an offense).  We have agreed with that argument.  As a result, there is no need to turn to the *Hardeman* factors.  The categorical approach decides here whether Gonzalez-Mancilla's prior misdemeanor convictions were enumerated offenses. *See Descamps v. United States*, 133 S. Ct. 2276, 2281–82 (2013) (explaining that under the "categorical approach" courts compare the elements of the statute of conviction to the elements of the generic offense included in the Guidelines).

Because the elements of the Wisconsin disorderly conduct statute comport with the generic meaning of the enumerated offense of disorderly conduct, the district court erred in assessing Gonzalez-Mancilla one criminal history point under U.S.S.G. § 4A1.1(c) for each of his prior disorderly conduct offenses.

Gonzalez-Mancilla contends that the district court's error mandates reversal and a recalculation of his sentence.  This court will reverse a district court's sentencing error "unless the error is harmless." *Reyes-Maya*, 305 F.3d at 368.  In sentencing cases, "the harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010); *see also United States v. Valdez*, 726 F.3d 684, 697 (5th Cir. 2013).  To satisfy this burden, there must be "evidence in the record that will convince us that

the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Ibarra-Luna*, 628 F.3d at 718 (internal quotation marks omitted). "That the sentence would remain within the adjusted Guidelines range is insufficient to indicate harmlessness[.]" *Valdez*, 726 F.3d at 697.

Had Gonzalez-Mancilla's prior disorderly conduct convictions been treated as exempt, he would have been assessed five instead of seven criminal history points. This would have reduced his Criminal History Category to III and resulted in a Guidelines range of 46 to 57 months. U.S.S.G. Ch. 5, Pt. A. The Government does not point to any evidence in the record that defeats the presumption against harmless error that applies to mistakes in calculating the Guidelines range. Reversal of Gonzalez-Mancilla's sentence is warranted.

### IV. Conclusion

For the foregoing reasons, we REVERSE Gonzalez-Mancilla's sentence and REMAND to the district court for further proceedings consistent with this opinion.